[CERTIFIED TRANSLATION]

**COMMONWEALTH OF PUERTO RICO**
**COURT OF FIRST INSTANCE**
**SUPERIOR COURT, SAN JUAN PART**

| | |
|---|---|
| **TELECOMMUNICATIONS BUREAU OF THE PUERTO RICO PUBLIC SERVICE REGULATORY BOARD,**<br><br>Plaintiff<br><br>vs.<br><br>**SOLIX, INC.**<br><br>Defendant | Case No.<br><br>Subject: Collection of Money |

**COMPLAINT**

TO THE HONORABLE COURT:

COMES NOW the plaintiff, the Puerto Rico Telecommunications Bureau (hereinafter "NET," for its Spanish acronym, or the "Plaintiff") of the Public Service Regulatory Board, through the undersigned legal counsel, and very respectfully alleges and prays:

**I.    PARTIES**

1.    Plaintiff NET is a bureau of the Public Service Regulatory Board with its own legal identity and capacity to sue. Its street and mailing address is 500 Roberto H Todd Ave. (Stop 18-Santurce) San Juan, P.R. 00907-3941; and its telephone number is 787-756-0804.

2.    Defendant Solix, Inc. (hereinafter "Solix" or the "Defendant") is a foreign corporation authorized to do business under the laws of the Commonwealth of Puerto Rico. According to the most recent information available in the Registry of Corporations and Entities of the Puerto Rico Department of State, its Registered Agent in Puerto Rico is CT Corporation System, and its designated office in Puerto Rico is located at Ochoa Building, 500 De La Tanca Street, Suite 514, San Juan, P.R. 00901; its mailing address is P.O. Box 9022946, San Juan, Puerto Rico, 00902-2946. Its telephone number is not recorded at the Registry.

## II.  JURISDICTION AND VENUE

3.    The Court of First Instance, San Juan Part, has jurisdiction and venue in this case inasmuch as it involves a claim that exceeds fifteen thousand dollars ($15,000.00) and because the codefendants have their designated office in this judicial region. Article 5.004 of Public Law No. 201 of August 22, 2003, as amended.

## III. THE FACTS

4.    The former Telecommunications Regulatory Board of Puerto Rico ("JRT," Spanish acronym), now the NET, and Solix executed Contract No. 2007-000047 for Defendant to administer and operate the Universal Service Fund of Puerto Rico (hereinafter, the "Contract"). *See* **Exhibit 1**. The maximum amount to be paid out under the Contract was $570,000.00.

5.    Pursuant to clause 21 of the Contract, the Contract was valid for three (3) years, from April 23, 2007 to April 23, 2010. The Contract could be extended for two (2) **optional** terms of one (1) year each, provided that it was negotiated and adopted by mutual agreement between the parties one hundred and eighty (180) days prior to the expiration of each term. *Id*.

6.    On April 21, 2010, NET and Solix amended the Contract to increase the established limit by $153,000.00 and extend the term an additional year. In light of the foregoing, the Contract was extended until April 24, 2011. *See* **Exhibit 2.**

7.    After April 24, 2011, the Contract was never amended or extended. Therefore, the contractual relationship between NET and Solix ended on April 24, 2011.

8.    Both the contract and the only amendment made to it established that no payment in excess of what was authorized in the Contract would be made unless it was authorized in advance and an amendment was duly executed. *See* **Exhibits 1 and 2.**

2

9.    However, Solix continued to provide services beyond April 24, 2011, and those services were billed, charged, and paid.

10.    The Office of the Comptroller of Puerto Rico (hereinafter the "Office of the Comptroller") conducted a compliance audit of NET's fiscal operations.

11.    According to Audit Report CP-21-08 of April 15, 2021 (hereinafter the "Audit Report"), during the period from April 25, 2011, to December 31, 2017, NET issued seventy-three (73) payments for services rendered and billed without an active contract in place. *See* **Exhibit 3**. The payments were, therefore, made improperly and in a manner contrary to the laws of the Government of Puerto Rico. The amount disbursed during said period was $1,031,028.00.

12.    The Audit Report recommended that the chair of the Bureau recoup the funds that were improperly disbursed to Solix. *Id.*

13.    In line with the recommendations of the Office of the Comptroller, on September 7, 2021, Carmen Serrano Burgos, the new executive director of the PSRB, sent Ms. Josephine Farkas, Defendant's representative, a collection letter detailing the results of the Audit Report and including invoice number 2022-298-2022-010. *See* **Exhibit 4**.

14.    The PSRB asked Defendant to pay the $1,031,028.00 within thirty (30) days of receiving the invoice. *Id.*

15.    On November 23, 2021, Mr. Eric D. Seguin, Plaintiff's vice-president, sent a letter to the PSRB stating that there was an effective contractual relationship between the parties during the period from April 25, 2011, to December 31, 2017, and requested until December 29, 2021, to collect the necessary information to provide a formal response. *See* **Exhibit 5**.

16.    On December 24, 2021, Defendant answered the PSRB's collection letter. *See* **Exhibit 6**. In essence, Defendant argued

3

that government agencies are not bound to follow the findings of the Office of the Comptroller; that Article 23 of the Contract allowed Defendant to continue working month by month even after the expiration of the Contract; that the monies with which it was paid are not public funds; and that Plaintiff's causes of action are time-barred. *Id.*

17.    On April 6, 2022, the PSRB replied to Solix's answer. *See* **Exhibit 7**. Plaintiff emphasized the fact that the Puerto Rico Supreme Court has been clear and consistent about the requirements to be met when executing government contracts, which include that the contract must be in writing and that this requirement is unavoidable in this type of contract.

18.    Furthermore, as to Defendant's arguments regarding the alleged month-by-month extension of the Contract, based on clause 23 of the Contract, Plaintiff stated the following, which we make part of the allegations in this Complaint:

> First of all, we must be clear that, as regards the options for the continuation of the contract upon its expiration, the contract contains language only for the purpose of granting the contracting government entity the right to two (2) **optional** term extensions of one (1) year each, to be negotiated and adopted by mutual agreement within one hundred and eighty (180) days prior to the end of each term. The public record does not state that these time extensions were made. Therefore, not only was the letter of April 1, 2011, requesting the second extension sent outside the one hundred and eighty (180) days established in clause 21 of the contract, but also, **the contract lacks language that authorized maintaining the contract in force through month-to-month extensions.**
>
> Second, clause 23, allegedly invoked by the Telecommunications Bureau (then the Telecommunications Regulatory Board) and which served as the basis for the month-to-month extension of the contract over a period of six (6) years (from 2011 to 2017), reads as follows: "In the event that the Board decides not to renew the contract, the contractor shall cooperate with the Board **in transitioning** (bold-type ours) the administrative responsibilities and records to the entity selected by the Board." Therefore, **clause 23 establishes the continuity of services in the**

4

SJ2024CV03141 04/04/2024 12:41:09 pm Entry No. 1 Page 5 of 11

**scenario that a successor company has already been selected and a transition process is carried out. This is not the scenario in the present case.** Therefore, in the scenario that we are faced with, the appropriate course of action would have been to sign a new contract in writing and in compliance with all the other requirements established by our legal system until the process of evaluating, selecting, hiring, and transitioning to a new company was completed, which did not happen.

Allowing the scenario proposed by Solix would implicitly promote an action at government agencies that could become a practice to easily bypass competition and compliance with the statutory requirements for entering into contracts with the state. Such a situation would be incompatible with the public policy of ensuring the sound administration of public funds that, for years, we have sought to protect.

We must keep in mind that in this case, a service was provided without a valid contract and in complete violation of the law for a period of six (6) years, much longer than the four (4) years during which the service was provided with a valid contract. Your client's interpretation of clause 23 is incorrect because, as we mentioned, Solix's authorization and contractual obligation regarding the continuation of the services was only in the scenario of a transition, which never occurred in this case. Thus, it is impossible to apply a transitional clause that is clearly inapplicable to this specific factual situation, especially considering that six (6) years would not be a reasonable transition period, for which reason the seventy-three (73) disbursements are clearly unsustainable in light of said clause.

*See* **Exhibit 7**. (Bold type added.)

19.   Regarding the averment that the monies used to defray the administrative costs of operating the fund are not public funds, the PSRB emphasized that Public Law No. 213 of 1996, as amended, known as the "Puerto Rico Telecommunications Act of 1996," in its Statement of Purpose provides that:

"[t]he Legislative Assembly recognizes that the telecommunications industry pursues the **public purpose** of providing our population with adequate access to telecommunications services at reasonable and affordable rates and fees. The Board created by this Act **shall protect the general public interest** […]." (Bold type added.)

*See* **Exhibit 7**.

5

20. The PSRB also stressed that Article 1 of Act 213 establishes that the JRT, now the NET, is the agency in charge of regulating telecommunications services in Puerto Rico and that all procedures instituted by the JRT will be in the name of the Government of Puerto Rico. *See* 27 L.P.R.A. §267 and **Exhibit 7.**

21. Accordingly, the JRPS stated in its reply that the NET is an administrative agency whose main purpose is to protect the public interest. When Solix executed the Contract and its amendment, it did so with an administrative agency of the Government of Puerto Rico, and this forces the parties to comply with the requirements established by law and case authority for government contracts. *Id.*

22. It was also concluded that the funds with which Solix was paid are public funds inasmuch as once private money is transferred to the coffers of an administrative agency of the Government of Puerto Rico with the legal authority to administer it and issue disbursements, it becomes public funds. *Id.*

23. Regarding the averment that the cause of action is time-barred, the PSRB argued that the Civil Code applicable at the time of the events was the Civil Code of 1930 and not the Civil Code of 2020, on which Defendant's averment that the cause of action is time-barred is based. Therefore, the statute of limitations is fifteen (15) years pursuant to Article 1864 of the Civil Code of 1930. *Id.*

24. On May 31, 2023, the PSRB sent a second collection letter to Defendant and instructed Solix that the failure to receive a response and/or payment of the amount owed within sixty (60) days would result in the filing of a judicial action for collection. *See* **Exhibit 8.**

25. On July 21, 2023, Defendant responded to the second extrajudicial collection letter with the same averments made in its letter of December 24, 2021. *See* **Exhibit 9.**

26. On February 5, 2024, the PSRB notified Solix that a judicial action to collect the amount owed would be filed. *See* **Exhibit 10.**

### IV.   CAUSES OF ACTION

#### A. Collection of Money

27.   Paragraphs 1 to 24 of this Complaint are incorporated herein by reference.

28.   The lawmaker has passed laws to establish control over the disbursement of government funds and government contracting to ensure the sound administration of the people's money. Vicar Builders v. E.L.A., 192 D.P.R. 256, 267 (2015).

29.   Article 1(a) of Public Law No. 18 of October 30, 1975, as amended, known as the "Registry of Contracts Act," provides that government entities, with no exception whatsoever, shall keep a registry of all contracts executed, including amendments thereto, and shall remit a copy thereof to the Office of the Comptroller within fifteen (15) days following the date of the execution or amendment of the contract. 2 L.P.R.A. § 97. No provision or consideration of services object of a contract may be demanded until the provisions of this section have been complied with. **Public funds may not be disbursed if the contract is not registered and has not been referred to the Office of the Comptroller.**

30.   Article 1(d) of Public Law No. 18 states that under no circumstance is the retroactive execution of government contracts for professional or advisory services allowed and that all contracts must comply with the requirements established in Public

Law No. 237-2004, as amended, known as the "Professional or Consulting Services Contracting Act."

31. Public Law No. 237-2004, as amended, known as the "Law to Establish Uniform Parameters for the Process of Contracting Professional or Consulting Services for Government Agencies or Entities of the Commonwealth of Puerto Rico," sets forth the requirements that any contract between a government entity and a contractor must meet. Some of these requirements are: (1) the contract must be prospective in nature; (2) only services rendered will be paid; (3) the contract must be in writing; and (4) the contract must establish the date of execution and its effective term. 3 L.P.R.A. § 8613; Rodríguez Ramos v. ELA et al., 190 D.P.R. 448, 459 (2014).

32. The contract being set in writing is an **unavoidable requirement. A contract to which the state is a party may not arise from a tacit agreement or from the actions of the parties**. Vicar Builders v. E.L.A., 192 D.P.R. at p. 267.

33. Art. VI, Sec. 9 of the Constitution of the Commonwealth of Puerto Rico provides that "public property and funds shall only be disposed of for public purposes, for the support and operation of state institutions, and pursuant to law."

34. The Supreme Court has also established rules governing government contracting. These rules are the following: (1) The state is constitutionally obliged to manage public funds with the highest fiduciary and ethical principles; (2) contracts between a private party and the state must be in writing, and this requirement does not allow for any exceptions; (3) verbal contracts may under no circumstance be validated by means of a retroactive written contract, inasmuch as said practice encourages corruption; (4) **private parties who contract without meeting government contracting requirements risk being held liable for**

their losses; and (5) **there is a consequential refusal to apply any remedy in equity, including unfair enrichment, to validate the public obligation when there is no written contract.** *See* Rodríguez Ramos v. ELA, 190 D.P.R. 448, 460-462 (2014); and Quest Diagnostics v. Municipio de San Juan, 175 D.P.R. 994, 1002 (2009).

35. The payments made by the extinct JRT to Defendant without a valid contract in place were unlawful insofar as there was no government contract to offer and pay for same. As a result, Defendant improperly collected the public funds claimed and has the obligation to return them.

36. Defendant may not invoke an error of fact or law, nor the unjust enrichment of the state or the doctrine of estoppel against the state.

37. The applicable laws provide that the party bringing an action for the collection of money must prove: (1) that there is a valid debt; (2) that it has not been paid; (3) that they are the creditor; and (4) that the defendants are their debtors. General Electric v. Concessionaires, Inc., 118 D.P.R. 32, 43 (1986). When it is proven that there is indeed a payment obligation, the burden of proving the extinction of the obligation rests with the opposing party. 31 L.P.R.A. § 3261.

38. As of September 7, 2021, Plaintiff has made good faith efforts to recoup the funds collected for the work performed without a valid contract, which amount to $1,031,028.00, but said efforts have been unsuccessful.

39. Defendant assumed responsibility for its losses as it could not continue its services with an expired contract. Solix provided the services without a valid contract for a period of six (6) years in breach of the applicable laws and regulations.

40. As previously mentioned, the above-cited laws, as well as their interpretive case authority, prohibit the disbursement

of public funds for services rendered without a valid government contract that meets all of the strict government contracting requirements.

41.    Defendant has chosen to ignore its payment obligations in spite of Plaintiff's collection efforts.

42.    Due to Solix's conduct, NET has no option but to appear before this Court to demand the collection of money judicially.

43.    The amount of $1,031,028.00 owed to NET is liquid, due, and payable.

44.    Net respectfully requests that the Honorable Court order Solix to pay the sum of $1,031,028.00 disbursed to Defendant in contravention of our laws.

WHEREFORE, NET respectfully requests that the Honorable Court GRANT the Complaint herein and consequently enter judgment against Defendant, ordering said party to pay NET the amount of $1,031,028.00, and that it make any other pronouncement that may be legally warranted.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, today, April 4, 2024.

*[signatures on next page]*

*s/Gerardo A. Flores García*
**Gerardo A. Flores García**
**PRSC Atty. Reg. No. 14,328**
Mobile: 787-604-3612
gerardo@adlegalpr.com


*s/Aurivette Deliz Delgado*
**Aurivette Deliz Delgado**
**PRSC Atty. Reg. No. 19,747**
Mobile: 787-597-5624
aurivette@adlegalpr.com

**ADVANCED LEGAL RESOURCES, PSC**
*Mailing address:*
P.O. Box 190768
San Juan, P.R. 00919-0768

11

**CERTIFICATE OF TRANSLATION**
**SPANISH TO ENGLISH**

**DOCUMENT:** Complaint in the case of Puerto Rico Telecommunications Bureau vs. Solix, Inc., filed on April 4, 2024 (original Spanish document consisting of 11 pages)

The undersigned, Margot A. Acevedo Chabert, USCCI, hereby certifies that she has been actively engaged as a professional translator and interpreter (English <> Spanish) certified by the Administrative Office of the United States Courts since 2006 (Certificate No. 06-001), that she has an MA in Translation from the University of Puerto Rico, and that to the best of her knowledge and understanding, the attached document is a true and correct translation of the original text provided for translation.

In Milwaukee, WI, on May 28, 2024

**Margot A. Acevedo Chabert, USCCI**